# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### AT NASHVILLE

_____

**LYNN HARTER individually and on behalf of
all others similarly situated,**

      **Plaintiff**

**vs.**                              **Civil Action No.: 3:10-0968
JUDGE SHARP
MAGISTRATE GRIFFIN**

**BEACH OIL COMPANY, INC.,**

      **Defendant**

_____

### PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT

Henry F. Todd, Jr., Esq.
**TODD AND SPENCER**
State Bar No. 005574
404 East College St., Suite I
Dickson, TN 37055
(615) 446-0511 - telephone
(615) 441-3437 - facsimile
e-mail: henrytoddjr@bellsouth.net

Eric G. Calhoun, Esq.
**CALHOUN & ASSOCIATES**
1595 N. Central Expressway
Richardson, Texas 75080
(214) 766-8100 telephone
(214) 308-1947 facsimile
eric@calhounmorganlaw.com

**ATTORNEYS FOR PLAINTIFF AND CLASS COUNSEL**

1

Plaintiff Lynn Harter ("Plaintiff"), through her undersigned counsel, files this Unopposed Motion for Preliminary Approval of Class Action Settlement.

# I.

## BACKGROUND OF LITIGATION

Plaintiff filed an action on October 14, 2010, alleging that Beach Oil Company, Inc. (the "Defendant") violated the Electronic Funds Transfer Act, 15 U.S.C. § 1693 *et seq.* ("EFTA"). On November 17, 2010, Plaintiff filed her Amended Complaint. Specifically, Plaintiff alleges that Defendant violated 15 U.S.C. § 1693b(d)(3)(C) which states, in relevant part:

(C) Prohibition on fees not properly disclosed and explicitly assumed by the consumer

No fee may be imposed by any automated teller machine operator in connection with any electronic fund transfer initiated by a consumer for which a notice is required under subparagraph (A), unless—

(i)       The consumer receives such notice in accordance with subparagraph (B) . . . .

In turn, Plaintiff alleges that Defendant violated the notice requirement set forth at subparagraph B (15 U.S.C. § 1693(d)(3)(B)):

 (B) Notice requirements

(i)       On the machine

The notice required under clause (i) of subparagraph (A) with respect to any fee described in such subparagraph shall be posted in a prominent and conspicuous location on or at the automated teller machine at which the electronic fund transfer is initiated by the consumer.

Defendant filed its Answer to Plaintiff's Complaint on December 13, 2010. The parties conducted formal and informal discovery concerning the facts and class certification related matters.

On March 5, 2012, Plaintiff filed her Motion for Class Certification and supporting documents [Doc. 48]. Following briefing, the Court granted the Motion for Class Certification [Docs. 74]. The parties, through counsel, then engaged in arms-length settlement negotiations.

2

The parties also attended a settlement conference with Magistrate Bryant. While the case did not

settle at the conference, discussions continued. The parties ultimately executed a Class Action

Settlement Agreement and Release ("Settlement Agreement") on or about March 26, 2015.[1]

Pursuant to this agreement, the Parties have agreed to the certification of the following Class:

> All persons who were charged a transaction fee at the ATMs operated by
> Defendant at ATMs located at (1) 601 N. Riverside Dr., Clarksville, TN;
> and (2) 1881 Ashland City Highway, Clarksville, TN; and were assessed
> a fee for withdrawing cash from the ATM located at (1) 601 N. Riverside
> Dr., Clarksville, TN between May 1, 2010 and October 18, 2010; and the
> ATM at (2) 1881 Ashland City Highway, Clarksville, TN between
> January 1, 2010 and October 18, 2010, the date Defendant posted a
> compliant notice on the ATMs (the "Class Period").[2]

## II.
## THE TERMS OF THE SETTLEMENT

In the interest of avoiding protracted and costly litigation, the Parties have agreed to a

proposed settlement with the following basic terms:

(1)     Defendants have agreed to create a settlement fund in the amount of $10,000.00

to be disseminated on a *pro rata* basis to every Participating Class Member who submits a claim

after the dissemination of notice and before the deadline, with any individual Participating Class

Member's share being capped at $200.00.

(2)     The parties have agreed that any unclaimed amount of the Settlement Fund after

payment of notice costs will be donated, on a *cy pres* basis, to a charitable organization(s)

benefiting consumers to be chosen by Plaintiff.

(3)     Defendant will pay costs for internet and publication notice of $3,000.00 to

Plaintiff's counsel.

---

[1] A copy of the Settlement Agreement is appended hereto as Exhibit 1.
[2] Excluded from the Class are (1) All directors, officers, agents, and employees of Beach Oil Company, Inc.(2) Any person or entity who timely opts out of this proceeding; and (3) any person who has given a valid release of the claims asserted in this suit.

3

(4)     Plaintiff's counsel will make an application for reasonable attorneys' fees and costs, to be awarded and paid by Defendant separately outside the Settlement Fund in the amount of $109,000.00.

(5)     Plaintiff will request an incentive payment of $3,000.00 for serving as class representative.

The parties have agreed on the following forms of Class Notice to be given to Class Members, pursuant to Section 7 of the Settlement Agreement as follows:

    **7.11   Publication.**  Notice to the Settlement Class shall be published on two separate occasions, no earlier than thirty (30) days and no later than forty-five (45) days after the date of entry of a Preliminary Approval Order and in the form and substance set forth in **Exhibit B-1** [to Settlement Agreement] in The Leaf Chronicle Newspaper Clarksville, Tennessee. The publication notice shall be a display ad of at least one-quarter (1/4) page in size.

    **7.12   Posted Notice.**  Notice to the Settlement Class shall be posted by Defendant, starting on the Notice Publication Deadline and continuing for sixty(60)days, which shall also be the last date for Class Members to opt out, on the ATMs at Issue in the form and substance set forth in **Exhibit B-3(Riverside) and B-3(Ashland City Hwy)**[to Settlement Agreement].

    **7.13   Website.**  Notice to the Settlement Class shall be posted, starting no later than thirty (30) days after entry of a Preliminary Approval Order and continuing for ninety (90) days, which shall also be the last date for Class Members to opt out, on the internet at a website created, monitored, and maintained by Defendant in the form and substance set forth in **Exhibit B-2**[to Settlement Agreement].

    **7.14   Costs.** Class Counsel will be responsible and pay for all costs and expenses associated with Class Notice by internet and publication as per 5.23 above.

    **7.15   Affidavit.**  Beach agrees to provide an affidavit confirming that it has complied with the Class Notice provisions contained in 7.12, the number of potential Class Members is approximately 6,108. Beach does not possesses personal identification numbers associated with these potential Class Members, it is impracticable and not cost effective to attempt to provide notice directly to the Class Members, and the ATMs at Issue are in full compliance with EFTA as of October 18, 2010.

4

## III.

## ANALOGOUS SETTLEMENTS OF CLAIMS ALLEGING VIOLATIONS OF THE EFTA'S ATM FEE DISCLOSURE REQUIREMENTS HAVE BEEN ROUTINELY APPROVED

Federal District Courts have routinely approved analogous class settlements under the EFTA.  For example, settlements similar to the one proposed in this case have been recently approved in the following cases:  *Campbell v. Hope Credit Union,* No. 2:10-cv-02649-STA (W.D. Tenn. 2013); *Vitatoe v. Citizens State Bank of New Castle*, No. 1:11-cv-01312-WTL-DML (S.D. In.), *Zachary Couch v. Indians, Inc*. No. 1:11-00963-MJD-WTL (S.D. In); *Brake v. Highland Corporation,* No. 3:11-cv-620 (M.D. Tenn.) (Campbell, T.); *Arthur v. Valwood Park Federal Credit Union,* No. 3:10-cv-00952-B (N.D. Tex); *Gaylor v. Comala Credit Union,* No. 2:10-cv-000725 (M.D. Ala.) (Thompson, M.); *Hart v. Guardian Credit Union,* No. 2:10-cv-00855 (M.D. Ala.) (Albritton, H.); *Dragotta v. Northwest Bancorp, Inc.*, No. 09-cv-632 (W.D. Pa.) (Fischer, J.) (final approval granted); *Jackman v. Global Cash Access Holdings, Inc.*, No. 09-cv-897 (W.D.Pa.) (McVerry, J.) (final approval granted); *Nolf v. Allegheny Valley Bank of Pittsburgh*, 09-cv-645 (W.D. Pa.)(Bissoon, J.)(final approval granted);  *Polevoy v. Devon Bank*, 08-cv-4822 (N.D. Ill.)(Kennelly, J.)(final approval granted);  *Stone et al. v. Corus Bank, N.A.*, 08-cv-1746, (N.D. Ill.) (Bucklo, J.)(final approval granted);  *Anthony v. Fifth Third Bank (Chicago)*, 08-cv-4359, (N.D. Ill.)(Schenkier, J.) (final approval granted);  *Arbelo, et al. v. Charter One Bank*, 08-cv-1516, (N.D. Ill.)(Cox, J.) (final approval granted); *Stone v. Marquette Bank,* 08-cv-6388. (N.D. Ill.)(Valdez, J.) (preliminary approval granted);  *Escalante v. Lincoln Park Savings Bank*, 08-cv-6152 (N.D. Ill.)(Ashman, J.) (final approval granted);  *Bruner v. AmericaUnited Bank & Trust Company*, 08-cv-124, (N.D. Ill.)(Nolan, J.) (final approval granted); *Marsh v. ATM Capital Management Inc.*, 07-cv-5808, (N.D. Ill.) (Coar, J.) (final

approval granted); and, *Christy v. Heritage Bank*, No. 3:10-cv-0874, (M.D. Tn.)(Sharp, J)(Preliminary approval granted). All of these cases were settled on terms similar to those in the proposed settlement that is now before this Court.

## IV.

## PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT IS APPROPRIATE

The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost and rigor of prolonged litigation.[3] Settlement agreements conserve judicial time and limit expensive litigation.[4] A proposed class action settlement should be approved as long as it is fair, adequate and reasonable and is not the product of collusion between the parties.[5]

Where, as here, the parties resolve class action litigation through a class-wide settlement, they must obtain the court's approval.[6] Review of a proposed class action settlement generally occurs in two steps. In the first instance, "[t]he judge should make a preliminary determination that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b)."[7] Additionally, "[t]he judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness

---

[3] *See Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)("Particularly in class action suits, there is an overriding public interest in favor of settlement."); *Assoc. for Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002); *Purdie v. Ace Cash Express, Inc.*, 2003 WL 22976611 (N.D.Tex. Dec. 11, 2003)("[T]he court should keep in mind the strong presumption in favor of finding a settlement fair."); 4 ALBA CONTE & HERBERT NEWBERG, NEWBERG ON CLASS ACTIONS §11:41, at 90 (4th ed. 2002) hereafter "NEWBERG ON CLASS ACTIONS") (Courts usually adopt "an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval.").
[4] 4 NEWBERG ON CLASS ACTIONS §11:41, at 87 ("The compromise of complex litigation is encouraged by the courts and favored by public policy.").
[5] *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984); *Lipuma v. American Express Co.*, 406 F. Supp. 2d 1298, 1314 (S.D. Fla. 2005).
[6] *See* Fed.R.Civ.P. 23(e).
[7] *Manual for Complex Litigation* (Fourth) § 21.632 (2004) (hereafter "*Manual*").

6

hearing."[8]  If the proposed settlement falls "within the range of possible approval," the Court should grant preliminary approval and authorize the parties to give notice of the proposed settlement to the class members.[9]  Stated another way, preliminary approval is a "determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness."[10]

The proposed settlement falls well within the "range of possible approval," particularly in light of the substantial risks and costs associated with further litigation.  Furthermore, the settlement is entitled to a presumption of fairness, since it was reached through arm's-length bargaining between experienced counsel, and does not evidence unduly preferential treatment or other obvious deficiencies. Here, the opposing attorneys engaged in arms-length settlement negotiations before reaching an agreement. They also attended a judicially supervised settlement conference.  Therefore, the proposed settlement satisfies the standards for preliminary approval and warrants the dissemination of notice apprising class members of their opportunity to participate in the settlement, or to opt-out from or object to the settlement.  Moreover, no hearing is required for the Court to preliminarily approve a settlement.[11]  The determination is generally "made on the basis of information already known, supplemented as necessary by briefs, motions, or informal presentations by the parties."[12]

## A.      A Review of the Applicable Factors Favors Approval of the Settlement

At the preliminary-approval stage, the Court should "make a preliminary determination on the fairness, reasonableness and adequacy of the settlement terms…"[13]  In determining

---

[8] *Id.*
[9] *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982).
[10] *In re Traffic Executive Association-Eastern Railroads*, 627 F.2d 631, 634 (2d Cir. 1980).
[11] *See, e.g., Williams v. New Orleans Public Serv., Inc.,* No. 75-1635, 1988 WL 98283,  at *1 (E.D. La. Sept. 15, 1988)(No preliminary hearing held where Court was familiar with case.).
[12] *Id.* at *4 (citing *Manual* §21.632).
[13] *Manual* §21.633.

7

whether a settlement is fair, adequate and reasonable, a court should consider the following factors:

1. Evidence that the settlement was obtained by fraud or collusion;

2. The complexity, expense and likely duration of the litigation;

3. The stage of the litigation and available discovery;

4. The probability of plaintiffs prevailing on the merits;

5. The range of possible recovery and certainty of damages; and

6. The opinions of class counsel, class representatives and absent class members.[14]

However, in determining whether the proposed settlement warrants preliminary approval, the Court is not required to engage in a rigorous analysis of these factors.[15] "If the proposed settlement discloses no reason to doubt its fairness, has no obvious deficiencies, does no improperly grant preferential treatment to class representatives or segments of the class, does not grant excessive compensation to attorneys, and appears to fall within the range of possible approval, the court should grant preliminary approval."[16] Because the Settlement Agreement here far exceeds any preliminary threshold regarding fairness, reasonableness and adequacy, the Court should preliminarily approve this class action settlement.

      **1.**      **The Proposed Settlement Negotiated By The Parties Enjoys An Initial <u>Presumption of Fairness</u>**

At the outset, the proposed settlement should enjoy a presumption of fairness. Courts usually adopt "an initial presumption of fairness when a proposed class settlement, which was

---

[14] *Reed v. General Motors Corp,* 703 F. 2d 170, 172 (5th Cir. 1983), *See also Mirfasihi v. Fleet Mortg. Corp.*, 450 F.3d 745, 748 (7th Cir. 2006).

[15] *See* Manual § 21.63 ("At the stage of preliminary approval, the questions are simpler, and the court is not expected to, and probably should not engage in analysis as rigorous as is appropriate for final approval."); *See also In re OCA, Inc. Securities and Derivative Litigation,* 2008 WL 4681369, *11 (E.D. La. Oct. 17, 2008)("As this motion is for preliminary approval of a class action settlement, the standards are not as stringent as those applied to a motion for final approval.").

[16] *Id*; *see also McNamara v. Bre-X Minerals Ltd.,* 214 F.R.D. 424, 430 (E.D. Tex. 2002).

8

negotiated at arm's length by counsel for the class, is presented for court approval."[17]  After the parties' arm's-length negotiations, the Court should not substitute its own judgment for the judgment of counsel and adjudicate the merits of the dispute.[18]  There is a "strong judicial policy favoring the resolution of disputes through settlement,"[19] and "a strong presumption in favor of finding the settlement fair."[20]  The very purpose of the compromise is to avoid the delay and expense of such a trial.").[21]  Rule 23(e) requires the court to intrude on that private consensual agreement merely to ensure that the agreement is not the product of collusion and that, taken as a whole, it is fair, adequate and reasonable to all concerned.

### 2.      The Substantial Risks Of Continued Litigation.

While Class Counsel believe that Plaintiff's statutory strict liability claims are wholly meritorious, Plaintiff and the Class face real risks if this litigation continues.  Although Class Counsel disagrees with Defendant's potential legal and factual defenses, Defendant contends they have merit. A court in Kentucky recently denied certification of an EFTA class.[22]  Similarly, a Nebraska court granted a motion to dismiss in lack of standing grounds.[23]

While this authority is obviously not binding on this Court, the Parties respectfully submit that this authority illustrates the risks attendant with continued litigation of the claims in dispute, thereby supporting the propriety of preliminary approval of the proposed settlement.

### 3.      The Proposed Settlement provides Fair and Substantial Relief to All Class Members

---

[17] 4H. NEWBERG AND A. CONTE, NEWBERG ON CLASS ACTIONS, §11:41 (4th Ed. 2002) at 90.
[18] *See Young v. Katz*, 447 F.2d 431, 433 (5th Cir. 1971)("In examining a proposed compromise…the court does not try the case).
[19] *Parker v. Anderson*, 667 F.2d 1204 (5th Cir. 1982),
[20] *Garza v. Sporting Goods Props., Inc.,* No. 93 CA-108, 1996 WL 56247, at *11 (W.D. Tex. Feb. 6, 1996).
[21] *See In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 934 (8th Cir. 2005)("We have recognized that a class action settlement is a private contract negotiated between the parties).
[22] *See Kinder v. Central Bank and Trust Co.,* No. 11-234-JMH, 2011 WL 5039286 (E.D. Ky. October 24, 2011).
[23] *Charvat v. First National Bank of Wahoo*, 8:12-cv-97, 2012 WL 2016184 (D. Neb. June 4, 2012); but see *In re: Regions Bank ATM Fee Notice Litigation*, 2011 WL 4036691 (S.D. Miss., September 12, 2011).

Under the terms of the proposed settlement, Participating Claimants in this case are entitled to a *pro rata* share of the Settlement Fund provided that no Class Member shall receive a settlement payment in excess of $200.00. This is substantially more than the ATM fees the Class Members were charged. By any measure, this is a reasonable result, constituting considerable relief to the class under the causes of action alleged here. This is not a case where the benefits to the class are largely injunctive, coupon-like, or of speculative value. Nor is this a situation in which the settlement disproportionately favors certain class members at the expense of others.

In short, if the parties did not agree to settle this case, motions briefing and trial would be lengthy, expensive and pose risks to both sides. The proposed settlement, on the other hand, permits a prompt resolution of the claims at issue, in a manner that is fair, reasonable and adequate to the Class, while at the same serving the Congressional purpose of causing the posting of ATM fee disclosure notice. This result will be accomplished at least months, and perhaps years, earlier than otherwise might be possible absent a settlement. Standing alone, the relatively expeditious resolution of the claims in dispute benefits the Class, specifically, and consumers, generally, and should be preliminarily approved.

**V.**

### THE PROPOSED CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES

**A.    The Proposed Class Meets the Requirements Under *Amchem* For Certification Of A Settlement Class**

Before granting preliminary approval of a settlement in a case where a class has not yet been certified, the court should determine whether the class proposed for settlement purposes is appropriate under Rule 23.[24]    Here, the Court has already granted class certification and made

---

[24] *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997); *Manual* §21.632.

relevant findings under Rule 23.[25]  Class certification is appropriate if a plaintiff demonstrates

that the action meets the four requirements of Rule 23(a) as well as at least one of the three

grounds under Rule 23(b). [26]  Rule 23(a) requires (1) numerosity; (2) a common question of law

or fact; (3) typicality of the proposed representative's claims or defenses; and (4) that the

representative parties will fairly and adequately protect the class.[27]  "In conducting this analysis,

the court should not turn the class certification proceedings into a dress rehearsal for a trial on

the merits."[28]  The elements of class certification itself need not be established conclusively, but

rather may be proven by a preponderance of the evidence.[29]  "The chance, even the certainty, that

a class will lose on the merits does not prevent its certification."[30]  A court may not refuse to

certify a class merely because it believes a class' claims may ultimately fail on the merits.[31]  Any

consideration of the merits at the class certification stage runs the risk of supplanting the jury as

the finder of fact.[32]  The class certification decision is "largely independent of the merits."[33]

The fact that the class may include persons that may not have been informed is not a

barrier to class certification.[34]  The EFTA specifically contemplates that violations will be

afforded class treatment and provides for a class remedy.[35]  Courts considering EFTA claims

have certified similar classes.[36]  Courts commonly certify similar classes of consumers.[37] Where

---

[25] *See* Order Granting Motion for Class Certification [Doc. 74].
[26] See *Messner v. Northshore University Health System*, 669 F. 3d 802, 811 (7th Cir. 2012);
*Feder v. Electronic Data Sys.*, 429 F.3d 125, 128 (5th Cir. 2005); *Bywaters v. United States*, 196 F.R.D. 458, 463
(E.D. Tex. 2000)(citing *Amchem. Prods., Inc. v. Windsor*, 521 U.S. 591, 613-14 (1997)).
[27]  See Fed. R. Civ. P. 23(a); *Kalonder v. Michaels Stores, Inc.*, 172 F.R.D. 200, 204 (N.D. Tex. 1997) (Kaplan J.).
[28]  *Messner*, 669 F. 3d at 811.
[29]  *Messner*, 669 F. 3d at 811.
[30]  *Schleicher v. Wendt*, 618 F. 3d 679, 687 (7th Cir. 2010).
[31]  *Messner*, 669 F. 3d at 823.
[32]  *Messner*, 669 F. 3d at 823.
[33]  *See Schleicher v. Wendt*, 618 F. 3d 679, 685 (7th Cir. 2010).
[34]  *Messner*, 669 F. 3d at 825-826; *Kohen v. Pacific Inv. Mgmt. Co. LLC*, 571 F.3d 672, 676 (7th Cir. 2009), cert.
den. 130 S.Ct. 1504 (2010).
[35]  *See* 15 U.S.C. § 1693m(a).
[36]  *See*, e.g., *Burns v. First Am. Bank*, No. 04C7682, 2006 WL 3754820 at *6 (N.D. Ill. Dec. 19, 2006); *Flores v.
Diamond Bank*, No. 1:07-cv-06403, 2008 WL 4861511 (N.D. Ill. Nov. 7, 2008); *Mabary v. Hometown Bank*, No.

affected consumers may be unaware of a violation of their rights and the amount in controversy is small, class actions are the best, if not only, way to proceed.[38]

In certifying a settlement class, however, the court is not required to determine whether the action, if tried, would present intractable management problems, "for the proposal is that there be no trial."[39]  Here the class meets all of the requirements of Rule 23(a) and satisfies the requirements of Rule 23(b)(3).  Therefore, the parties now request that the Court certify the proposed settlement class.

### B.     The Requirements Of Rule 23(a) Are Met

Rule 23(a)(1) requires that the class be so large that joinder of all members is impracticable.  To satisfy the numerosity requirement, "a plaintiff must ordinarily demonstrate some evidence or reasonable estimate of the number of purported class members."[40]  Class sizes of thirty to forty members raise a presumption that the numerosity requirement is satisfied.[41]  Courts accept common-sense assumptions regarding the numerosity requirement.[42]  A Plaintiff need not allege the exact number and identity of the class members, but rather must establish that joinder of them is impracticable.[43]  Defendant acknowledges that there are more than 6,108

---

4:10-cv-3936, 2011 WL 5864325 (S.D. Tex. November 22, 2011); see also decision in *Patrick Hart v. Guardian Credit Union*, Case No. 2:10-cv-00855, 2011 WL 2434207 (M.D. Ala. June 16, 2011).

[37] *See*, e.g., *Purdie v. Ace Cash Express, Inc.*, No. Civ.A. 301CV1754L, 2003 WL 22976611 (N.D. Tex. 2003); *Castro v. Collecto, Inc.*, 256 F.R.D. 534 (W.D. Tex. 2009); *Henry v. Cash Today, Inc.,* 199 F.R.D. 566 (S.D. Tex. 2000).

[38] *See Purdie*, 2003 WL 22976611 at *4.

[39] *Amchem*, 521 U.S. at 620; *see also* Fed.R.Civ.P. 23(b)(3)(D).

[40] *Pederson v. Louisiana State University*, 213 F.3d 858, 868 (5th Cir. 2000)(internal quotation omitted).

[41] *See* 1H. Newberg & A. Conte, Newberg on Class Actions, § 3:5 (4th ed. 2003).

[42] *See Cohen*, 242 F.R.D. at 299 ("Courts are permitted to 'accept common sense assumptions' about the numerosity requirement.").

[43] *See Gibb v. Delta Drilling Co.,* 104 F.R.D. 59, 72 n.14 (N.D. Tex. 1984) (Fish, J.).  *See also In re Elec. Data Sys. Corp. Sec. Litig.,* 226 F.R.D. at 564 (citing *Pederson*, 213 F.3d at 868 (5th Cir. 2000).

transactions at issue. Given the size of the class, it is clear that joinder of all members would be impracticable and that the numerosity requirement of Rule 23(a) is satisfied.[44]

The proposed class also meets the commonality requirement of Rule 23(a)(2), which requires that "there are questions of law or fact common to the class." This requirement is met "where there is at least one issue, the resolution of which will affect all or a significant number of the putative class members."[45] Here, Plaintiff's Amended Complaint specifically lists the common issues implicated by her claims:

> (a) Whether Defendant was at all relevant times during the class period an automated teller machine operator which imposed a fee on consumers for providing host transfer services to those consumers;
>
> (b) Whether Defendant was the operator of the ATMs;
>
> (c) Whether Defendant complied, at all times during the class period, with the notice requirements of 15 U.S.C. § 1693b(d)(3) and 12 C.F.R. § 205.16;
>
> (d) Whether Plaintiff and members of the Class are entitled to statutory damages, costs and attorney's fees for Defendant's acts and conduct;[46] and
>
> (e) Whether any statutory defenses are applicable.

Plaintiff also meets the typicality requirement of Rule 23(a). Rule 23(a)(3) requires that "the claims…of the representative parties are typical of the claims…of the class…"[47] The test for typicality is not demanding,[48] and it "focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent."[49] Here, the named Plaintiff's claims are typical of those of the Class because they derive from an identical factual predicate, and they are based upon the same legal theory. Plaintiff's interests are

---

[44] *See* 1 Newberg on Class Actions §3.05, 3-25 (3d ed.1992)(a class consisting of more than forty members "should raise a presumption that joinder is impracticable").
[45] *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 625 (5th Cir. 1999) (quoting *Lightbourn v. County of El Paso*, 118 F.3d 421, 426 (5th Cir. 1997).
[46] *See* Complaint, ¶45.
[47] Fed.R.Civ.P. 23(a)(3).
[48] *Shipes v. Trinity Inds.*, 987 F.2d 311, 316 (5th Cir. 1993).
[49] *Lightbourn*, 118 F.3d at 426.

13

co-extensive with those of the class, since every class member claims injury resulting from the same, uniform alleged misconduct by Defendant.

The fourth and final requirement of Rule 23(a) is that the "representative parties will fairly and adequately protect the interests of the class."[50]  To meet the adequacy requirement, the "class representatives, their counsel, and the relationship between the two [must be] adequate to protect the interests of absent class members."[51]  Differences between a named plaintiff and class members will render the named plaintiff an "inadequate" representative only if those differences create conflicts between the interests of the named plaintiff and the interests of class members.[52]

Here, there are no conflicts of interest or other antagonisms between Plaintiff on the one hand and Class Members on the other.[53]  All are individuals with the mutual incentive to establish the alleged violation of EFTA.  All class members were impacted by the practices at issue in an identical manner. All class members will receive equal benefits under the settlement. In addition, Plaintiff's counsel has provided fair and vigorous representation for the Class. Plaintiff's counsel, Henry Todd, Jr., Eric Calhoun and B.J. Wade, have substantial experience in similar consumer class action litigation and have regularly been deemed to be adequate class counsel.  Plaintiff has retained counsel experienced in litigating consumer class actions.  The Court has already appointed them as class counsel.[54]

C.    **The Requirements Of Rule 23(b) Are Met**

1.    **Common questions of law and/or fact predominate over questions affecting individual class members**

---

[50] Fed.R.Civ.P. 23(a)(4).
[51] *Unger v. Amedisys, Inc.*, 401 F.3d 316, 321 (5th Cir. 2005)(citing *Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. 2002)).
[52] *Mullen*, 186 F.3d at 625-26.
[53] *See Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468, 472 (5th Cir. 1986).
[54] *See* Memorandum [Doc 73]; Order [Doc. 74].

14

Finally, the proposed class meets the requirements of Rule 23(b)(3). Rule 23(b)(3) imposes two prerequisites – predominance and superiority: "[Q]uestions of law or fact common to the members of the class [must] predominate over any questions affecting only individual members, and…a class action [must be] superior to the other available methods for the fair and efficient adjudication of the controversy."[55] To predominate, "common issues must constitute a significant part of the individual case."[56] There is no mathematical or mechanical test for evaluating predominance.[57] The focus of the inquiry is to determine whether a proposed class is "sufficiently cohesive to warrant adjudication by representation."[58] The predominance test is readily met in certain cases alleging consumer or securities fraud.[59] Common questions can predominate if a common nucleus of operative facts and issues underlies the claims brought by the proposed class.[60] The existence of individual questions does not defeat class certification.[61]

The predominance analysis begins with the elements of the underlying cause of action.[62] Here, as noted above, the EFTA is a strict liability statute.[63] If no notice was posted on the ATM, Defendant cannot charge a fee. There is no reliance element.[64] Hence, there are only common, not individual, liability questions. Where common evidence establishes a prima facie case of liability, the predominance fact is met.[65] The plaintiff must demonstrate that issues "that are subject to generalized proof and thus applicable to the class as a whole…predominate over those issues that are subject only to individualized proof."[66] As the Supreme Court explained in

---

[55] Fed.R.Civ.P. 23(b)(3).
[56] *Mullen*, 186 F.3d at 626.
[57] *Messner*, 669 F. 3d at 814 (citing *7AA Wright & Miller*, Federal Practice & Procedure §1778 (3d ed. 2011)).
[58] *Messner,* 669 F. 3d at 814 (quoting *Amchem Products v. Windsor*, 521 U.S. 591, 623 (1997)).
[59] *Id.*
[60] *Messner,* 669 F. 3d at 815 (citations omitted).
[61] *Messner,* 669 F. 3d at 815.
[62] *Messner,* 669 F. 3d at 815 (citations omitted).
[63] *See Burns*, 2006 WL 3754820 at *6.
[64] *Id.*
[65] *Messner,* slip op. at 26 (citing *Blades v. Mousanto*, 400 F. #d 562, 566 (8th Cir. 2005)).
[66] *Nichols v. Mobile Board of Realtors, Inc.*, 675 F.2d 671, 676 (5th Cir. 1982).

15

*Amchem*, "[t]he Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."[67]

As described above, Plaintiff and the Class allege statutory injury by a common course of conduct. These allegations provide the common issues required to ensure predomination of common questions over individual issues. Similarly, the damage issues in this case are especially well suited for class-wide resolution because every Class Member seeks the same quantum of statutory damages which is dependent upon a unitary demonstration of Defendant's noncompliance with the ATM fee disclosure requirements of EFTA.[68]

### 2.    A class action is the superior means to adjudicate the claims at issue

The Court's final consideration in applying Rule 23(b)(3) is whether a class action is the superior method for adjudicating the case. The Court has already made these findings.[69] Rule 23(b)(3) lists the factors pertinent to the superiority determination as follows:

> (A) the interest of the members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of the class action.[70]

All four of these factors support certification here for settlement purposes.

### A.    Most class members have an insufficient interest to justify individual lawsuits

Certification permits a class-wide adjudication of the claims of similarly situated claimants when individual prosecution would not be cost-effective. The Supreme Court has

---

[67] *Amchem* 521 U.S. at 623.
[68] *See In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 522 (S.D.N.Y. 1996).
[69] Order [Doc. 74]; Memorandum [Doc. 73].
[70] Fed.R.Civ.P. 23(b)(3)

16

frequently noted the need for aggregate representation through certification if such claims are to be addressed.[71]  In *Amchem*, the Supreme Court stated:

> The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.  A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.[72]

Effective private enforcement requires mechanisms to aggregate these relatively small but important claims lest the relatively small stake of each individual consumer present an insurmountable hurdle to recovery.  Class litigation is therefore indispensable if consumers are to play a role in deterring conduct identified by Congress as being generally harmful, and therefore serves as an important compliment to public and quasi-public enforcement procedures.

This consumer action against Defendant on behalf of ATM users meets this test.  The class action mechanism is meant to afford remedies to claimants who cannot otherwise prosecute their claims in a cost-effective manner.[73]  The claims at issue here are such that class relief is the only realistic alternative to no relief at all for the vast majority of Class Members.

As the district court stated in *Burns*:

> In the end, "[d]etermining whether a class action satisfies manageability concerns involves a practical, on-the-ground assessment of whether the proposed efficiencies from a class action will outweigh the administrative problems and inefficiencies likely to ensue." *Hamilton v. O'Connor Chevrolet, Inc.,* 2006 WL 1697171, *13 (N.D.Ill.2006). Adjudicating the class claims here will take no more effort than it would to adjudicate the claims of Plaintiffs alone. In contrast to a case like *Simer,* for example, this case is not plagued with individual issues regarding a class member's state of mind or an amorphous class. *See Simer,* 661 F.3d at 673-74 (involving notice to more than 1 million potential class members). Whether pursued individually or as a class, the predominating, perhaps only, question will be whether Defendant violated EFTA in posting a fee notice on its ATM machines that contradicted the on screen fee notice and did not represent

---

[71] *Deposit Guaranty Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985).

[72] *Amchem*, 521 U.S. at 617 (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997)).

[73] *General Tel. Co. of Southwest v. Falcon,* 457 U.S. 147, 155 (1982).

17

the actual fee that class members were charged. Weighing the various efficiencies against the potential problems, this Court finds that a class action is the superior method for resolving this controversy.[74]

### B. The extent and nature of any other litigation commenced by class members

There are no other pending class actions against Defendant asserting the claims here in dispute. Therefore, this factor supports settlement class certification.

### C. This Court is an appropriate forum for resolution of the claims in dispute

There is no question that this Court has subject matter jurisdiction over the claims alleged in this case, personal jurisdiction over the Parties and that personal jurisdiction extends to members of the Class under the Due Process Clause because the notice provided in this case will be constitutionally sufficient.[75]

### D. Manageability

The Supreme Court confirmed in *Amchem* that the manageability of a class action at trial is an irrelevant consideration in the context of a proposed settlement class, because the proposal is that there be no trial.[76] Therefore, the Court need not consider manageability as part of its settlement approval analysis.

## VI.

## THE PROPOSED NOTICE TO PUTATIVE CLASS MEMBERS IS APPROPRIATE

This Court has wide discretion in determining what constitutes reasonable notice of a class settlement under Rule 23(e), in form as well as method.[77] The notice should be "reasonably

---

[74] *Burns*, 2006 WL 3754820 at *12.
[75] *Shutts*, 472 U.S. at 811-812.
[76] *Amchem*, 521 U.S. at 620.
[77] *See Franks v. Kroger Co.*, 649 F.2d 1216, 1222-23 (6th Cir. 1981), *modified on other grounds on rehearing*, 670 F.2d 71 (6th Cir. 1982); 7B Fed. Prac. & Proc. § 1797.6.

18

calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."[78]

In this case, after careful discussion and consideration, the Parties agree on the content and methods of notice.  The parties have agreed to three forms of notice: (1) notice on the ATMs at issue; (2) published notice; and (3) internet notice.  Notably, the Seventh Circuit recently endorsed these forms of notice in a similar EFTA case.[79]  The parties concur that direct mail notice is not efficient in this action for two primary reasons:  First, it would be difficult to obtain mailing addresses for the thousands of putative class members implicated by the proposed settlement.  This is because the subject address data does not exist in any single depository.  Instead, the information is within the possession of a substantial number of issuing banks which issued debit or credit cards to Plaintiff and the putative class.  Second, the cost of direct mail notice in this case would be substantial and disproportionate to the recovery.

Therefore, the Notice set forth in the Settlement Agreement represents the best practicable notice in the context of the claims in dispute.  A copy of the proposed Notice is appended to the Settlement Agreement as Exhibits B1, B2 and B3(Riverside and Ashland City Hwy).  Defendant has agreed to the posting of notice on the ATMs at issue, so that repeat ATM customers will be notified.  Similar forms of notice have been approved in other cases.[80]

---

[78] *DeJulius v. New England Health Care Employees Pension Fund*, 429 F.3d 935, 944 (10th Cir. 2005) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950).
[79] *Hughes v. Kore Enterprise, Inc.* 731 F.3d 672, 674 (7th Cir. 2013)
[80] *See e.g. Campbell v. Hope Credit Union*, No. 2:10-cv-02649-STA (W.D. Tenn. 2013); *Vitatoe v. Citizens State Bank of New Castle,* No. 1:11-cv-01312-WTL-DML (S.D. In. October 4, 2011), *Zachary Couch v. Indians, Inc.,* No. 1:11-00963-MJD-WTL (S.D. IN, June 25, 2012; *Hart v. Guardian Credit Union,* Cause No. 2:10-cv-00855 (M.D. Ala. June 16, 2011); *Gaylor v. Comala,* Cause No. 2:10-cv-00725-MHT (M.D. Ala. November 17, 2011); *Jackson v. JSC Federal Credit Union,* No. H-10-2976, (S.D. Tex. January 13, 2011*); Arthur v. Valwood Park Federal Credit Union,* No. 3:10-cv-00952-B (N.D. Tex. March 3, 2011); *Poechmann v. Alerus Financial, National Association*, No. 10-cv-4186 (Minn. July 1, 2011); *Barreto v. Center Bank,* No. 10-cv-6554 (N.D. Ill. March 24, 2011); *Escalante v. Travelex Currency Services, Inc. f/k/a Travelex America, Inc. d/b/a Travelex,* No 09-C-2209 (N.D. Ill. September 16, 2009); *Arbelo v. L&M Produce, Inc. d/b/a Fresh Marketplace, an Illinois corporation,* No. 09-C-3428 (N.D. Ill. December 21, 2009);  *Markoff v. Independent Bank,* No. 09-12639 (E.D. Mich. January 18, 2011); *Siragusa v. Advance Financial Federal Credit Union,* No. 2:09-cv-328-TLS (N.D. Ind. March 16, 2010); *Reich v. Unity One*

19

Rule 23(c)(2)(B) states, "[f]or any class certified under Rule 23(b)(3), the court must direct to class members the best notice practicable under the circumstances. . . ." [81] Rule 23(e)(1) similarly requires, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise."[82]

As for the content of the Notice, Rule 23(c)(2)(B) provides: "The notice [to a Rule 23(b)(3) class] must concisely and clearly state in plain, easily understood language: the nature of the action, the definition of the class certified, the class claims, issues or defenses, that a class member may enter an appearance through counsel if the class member so desires, that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded, and the binding effect of a class judgment on class members under Rule 23(c)(3)."[83]

The proposed form of notice describes the nature, history and status of the litigation; sets forth the definition of the Class; states the class claims and issues; discloses the right of Class members to seek exclusion from the Class or to object to the proposed settlement, as well as the deadlines for doing so, and warns of the binding effect of the settlement approval proceedings on

*Credit Union,* No 0:10-cv-00606-JJG (Minn. May 05, 2011); *Barlo v. First Financial Bank, N.A.,* No. 2:10-cv-235 (N.D. Ind. March 18, 2011); *Thomas v. Mid-Missouri Bank,* No. 10-3139-CV-S-ODS (W.D. MO. December 9, 2010); *Stone v. Marquette Bank,* No 08 c 6388 (N.D. Ill. June 10, 2009); *Stone v. Corus Bank, N.A.,* No. 08-C-1746 (N.D. Ill. April 9, 2009); *Popovic v. USX Federal Credit Union,* No. 09-cv-631 (W.D. Pa. February 17, 2010); *Popovic v. Dollar Bank,* No. 2:10-cv-00432-NBF (W.D. Pa. September 3, 2010) App; *Polevoy v. Devon Bank,* No. 08-C-4822 (N.D. Ill. February 3, 2009); *Parker v. Suntrust Bank,* No. 3:09 0706 (M.D. Tenn. December 21, 2009); *Parker v. First-Citizens Bank & Trust Company, et al,* No. 3;09-0588 (M.D. Tenn. October 1, 2009); *Nolf v. Allegheny Valley Bank of Pittsburgh,* No. 09-645 (W.D. Pa. October 16, 2009); *Marsh v. ATM Capital Management, Inc.,* No. 07 C 5808 (N.D. Ill. July 21, 2008); *Jackman v. Global Cash Access Holdings, Inc.,* No 09-cv-897-TFM (W.D. Pa. December 3, 2009); *Howard v. The Canandaigua National Bank and Trust Company,* No. 09-cv-6513 (November 3, 2010); *Greiff v. First Commonwealth Bank,* No. 10-1224 (W.D. Pa. March 3, 2011); *Escalante v. Lincoln Park Savings Bank,* No. 08-C-6152 (N.D. Ill. April 14, 2009); *Dover v. GNC Community Federal Credit Union,* No. 09-cv-810 (W.D. Pa. February 16, 2010); *Dragotta v. Northwest Bancorp, Inc., d/b/a Northwest Savings Bank,* No. 09-cv-632 (W.D. Pa. November 23, 2009); *Buechler v. G.C.K., Inc.,* No. 1:10-cv-3188-ELH (Md. July 13, 2011); *Bruner v. America United bank & Trust Company,* No. 08-C-124 (N.D. Ill. October 29, 2008); *Arbelo v. Charter One Bank,* No. 08-1516 (N.D. Ill. June 16, 2009); *Anthony v. Fifth Third Bank (Chicago),* No. 08-C-4359 (N.D. Ill. April 28, 2009).

[81] Fed.R.Civ.P. 23(c)(2)(B)
[82] Fed.R.Civ.P. 23(e)(1)
[83] Fed.R.Civ.P. 23(c)(2)(B).

people who remain in the Class.  In addition, the Notice describes the terms of the proposed settlement and provides contact information for Plaintiffs' Counsel, as well as identifying the fee that they propose to request from the Court.  The Notice also discloses the time and place of the Final Settlement Hearing and the procedures for commenting on the settlement and/or appearing at the hearing.  The contents of the notice therefore satisfy all applicable requirements.

## VII.

## CONCLUSION

For all of the foregoing reasons, the Parties respectfully request that the Court (1) grant preliminary approval of the proposed class action settlement; (2) certify the proposed class; (3) authorize the publication of Class Notice; and, (4) schedule a final approval hearing approximately ninety (90) days after the date of preliminary approval.

**Respectfully submitted,**

**Todd and Spencer**

By: //s// Henry F. Todd, Jr.
Henry F. Todd, Jr., Esq.
State Bar No. 005574
404 East College St., Suite I
Dickson, TN 37055
(615) 446-0511 - telephone
(615) 441-3437 - facsimile
e-mail: henrytoddjr@bellsouth.net


**CALHOUN & ASSOCIATES**

By://s// Eric G. Calhoun
Eric G. Calhoun, Esq.
1595 N. Central Expressway
Richardson, Texas 75080
(214) 766-8100 telephone
(214) 308-1947 facsimile
eric@calhounmorganlaw.com

21

**ATTORNEYS FOR PLAINTIFF AND
CLASS COUNSEL**

## CERTIFICATE OF SERVICE

I hereby certify that on the ___ day of April, 2015, the below counsel of record will be served with a copy of this document via the Court's CM/ECF system pursuant to the local rules of this Court, or other allowable means. If said counsel of record has not registered for electronic notice, a copy will be served via first class U.S. mail.

**Dickinson Wright,PLLC**
Martin Holmes,Esq.
Attorney at Law
Fifth Third Center
Suite 1401
424 Church Street
Nashville, TN 37219
Telephone: (615)620-1717
Facsimile: (615)256-8386
mdholmes@dickinsonwright.com
ATTORNEYS FOR DEFENDANT

By:     //s// Henry F. Todd, Jr.
        Henry F. Todd, Jr., Esq.